## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **K INVESTMENTS, INC** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **B- GAS LIMITED A/K/A BEPALO LPG** | : | **ADMIRALTY** |
| **SHIPPING, LTD.; B-GAS A/S; BERGSHAV** | : | |
| **SHIPPING, LTD. ; BERGSHAV** | : | |
| **SHIPHOLDING AS; BERGSHAV SHIPPING AS** | : | **C.A. No.: 3:21-cv-16** |
| **B-GAS HOLDING LTD; ATLE BERGSHAVEN** | : | |
| | : | |
| **Defendants** | : | |

### PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

Plaintiff K INVESTMENTS, INC., by and through undersigned counsel, for its Verified Complaint against: B-GAS LIMITED A/K/A BEPALO LPG SHIPPING, LTD; B-GAS A/S; BERGSHAV SHIPPING LTD; BERGSHAV SHIPHOLDING AS; BERGSHAV SHIPPING AS; B-GAS HOLDING LTD; and ATLE BERGSHAVEN (collectively, "Defendants") alleges and pleads as follows:

### I.       JURISDICTION, VENUE AND PARTIES

1.       This is an admiralty and maritime claim within the meaning of rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract, *i.e.* an executed bareboat charter party for the employment of a seagoing cargo vessel.  This case also falls under this court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provisions of Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims, and Asset Forfeiture Actions (hereinafter "Supplemental Rule B") and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration.

2.       At all times material hereto Plaintiff, K INVESTMENTS, INC. (hereinafter "Owners" or "Plaintiff"), was a corporation organized under the laws of the Republic of the

Marshall Islands and the registered owner of the LPGC ECO LOYALTY ("ECO LOYALTY" or the "Vessel"), a fully pressurized liquid petroleum gas carrier vessel registered in the Republic of the Marshall Islands with IMO No. 9710335.

3.      At all times material hereto Defendant, B-GAS LIMITED A/K/A BEPALO LPG SHIPPING, LTD. (hereinafter "B-GAS LIMITED" or "Charterers"), was and is a foreign company organized under the laws of the Republic of Cyprus.    At all times material hereto B-GAS LIMITED was the bareboat charterer of the ECO LOYALTY under a bareboat charter party contract dated June 23, 2014 (the "Bareboat Charter").   A copy of the Bareboat Charter and addenda thereto are attached to this Original Verified Complaint as **EXHIBIT 1**.   Though incorporated in Cyprus, with a registered office address at Miltonos 32, 3050, Limassol, Cyprus, the business activity of B-GAS LIMITED was actually carried on entirely by Defendant B-GAS A/S.

4.       B-GAS A/S is a corporate entity organized under the laws of Denmark with its office facilities at Nybrogade 12, 1203 Copenhagen, Denmark, since 2011. At all times material hereto B-GAS A/S carried on the commercial LPG business of the BERGSHAV group under the brand name "B-GAS".

5.      At all times material hereto BERGSHAV SHIPPING, LTD. was and is a foreign company organized under the laws of Cyprus with its registered office address at Miltonos 32, 3050, Limassol, Cyprus.

6.      At all times material hereto B-GAS HOLDING LTD.  was and is a foreign company organized under the laws of Cyprus with its registered office address at Miltonos 32, 3050, Limassol, Cyprus.

7.     At all times material hereto BERGSHAV SHIPHOLDING AS is a corporation organized and existing under the laws of Norway with its business address at Hasseldalen, NO-4878 Grimstad, Norway.

8.     At all times material hereto BERGSHAV SHIPPING AS was a company organized in Norway with its business address at Hasseldalen, NO-4878 Grimstad, Norway.

9.     At all times material hereto Atle Bergshaven, an individual person and a resident of Norway, is the chairman of BERGSHAV SHIPHOLDING AS, of which he is also a major shareholder with his business address at Hasseldalen, NO-4878 Grimstad, Norway.

## II.     THE SUBSTANTIVE CLAIMS

10.     Under the June 23, 2014 bareboat charter party and addenda thereto, Plaintiff chartered its vessel ECO LOYALTY to B-GAS LIMITED for:

a.     A term of "7 years."  EXHIBIT 1 at Box 21, Charter Period (Cl.2);

b.     At a hire rate of USD 114,500 per calendar month plus an option to extend for three (3) years @ USD 123,500 per calendar month; more or less at charterers option plus or minus 15 days on final period (option to be declared by Charterers latest 6 months prior to the start of the redelivery window)  *Id*. at Box 22;

c.     Hire was payable in advance as provided in EXHIBIT 1 at Boxes 25 and 26 respectively;

d.     The interest rate for delayed payments of hire was agreed to be as provided in EXHIBIT 1 at Box 24, *i.e.* per clause 11(f).

11.     Under the Bareboat Charter (EXHIBIT 1, clause 28), the following occurrences constituted events of default entitling the respective parties  to terminate the charter with immediate effect as follows: (i) (under clause 28(a)) by Owners' giving notice in writing if Charterers fail to pay hire in accordance with Clause 11; (ii) (under clause 28(d)) by either party giving written

notice in the event: "of an order being made or resolution passed for the winding up, dissolution, liquidation or bankruptcy of the other party…or if a receiver is appointed, or if it suspends payment, ceases to carry on business or makes any special arrangement or composition with its creditors."

12.     In the event of termination of the Bareboat Charter, Owners, under clause 29, had the right to immediately repossess the vessel as provided therein.  EXHIBIT 1 at clause 29.

13.    Under clause 30 of the Bareboat Charter, Plaintiff as vessel owner, and B-GAS LIMITED as bareboat charterer, agreed to submit all of their disputes for resolution in London arbitration and under English law.

### i.    Delivery of Vessel and termination of the bareboat charter

14.     The Vessel was delivered to B-GAS LIMITED on June 17, 2015 following the completion of its construction at the shipyard in Japan.   Thereafter, having taken delivery as a bareboat charterer, B-GAS LIMITED traded the vessel under the name "B GAS SUMMIT."  The minimum period of the bareboat charter runs until June 2, 2022.

15.     Beginning approximately in May 2020, B-GAS LIMITED approached Plaintiff demanding a 50% reduction of the charter hire for the following six (6) months.  It claimed the Covid-19 pandemic had affected its earnings, and proposed repaying the reduction-caused shortfall over the next two (2) years of the charter party term.  The proposal of B-GAS LIMITED was addressed not only to Plaintiff but also to three other owners under the same management who had vessels on charter to B-GAS LIMITED.

16.     Plaintiff rejected the hire reduction proposal of B-GAS LIMITED and insisted hire should continue to be paid without any reduction or interruption as provided in the bareboat charter.

17.     On August 24, 2020, Owners invoiced Charterers the sum of USD 114,500 in respect of the payment of hire for September 17, 2020 to October 17, 2020 (the "August Invoice"). A copy of the invoice is hereto attached as **EXHIBIT 2.**

18.     On September 17, 2020, in breach of the Bareboat Charter, Charterers part-paid the August Invoice in the sum of USD 57,250.  This represented 50% of the hire due to Owners under the August Invoice.  At the time of payment, no explanation was given by Charterers regarding the failure to pay the full hire due to Owners.

19.     On September 18, 2020, Owners' English solicitors, Ince Gordon Dadds LLP ("Ince"), demanded of Charterers (via brokers) payment of the USD 57,250 balance of hire outstanding, with such payment to be made by Charterers no later than COB London Time on Monday September 21, 2020.

20.     On September 21, 2020, Nordisk Legal Services ("Nordisk") (acting on behalf of Charterers) responded to Ince.  They stated that payment had not been made as an agreement had been reached between Charterers and the other bareboat owners, which agreement they expressly acknowledged did not include Owners.  It was further stated that Charterers' "current financial position and cash flow situation is challenging."

21.     Responding to Nordisk on September 21, 2020, Ince reiterated the demand for the outstanding payment of USD 57,250 of hire due to Owners be paid no later than COB London time on September 22, 2020.  No response was received from Nordisk, nor was any further payment of hire made to remedy Charterers' breach as the deadline passed.

22.     On September 25, 2020, Owners commenced arbitration under the charter party with notice to Nordisk of the appointment of Mr. Gaisford as Owners' arbitrator.  Charterers failed

to give notice of appointment of an arbitrator. Accordingly, under the charter party terms, on October 14, 2020, Owners appointed Mr. Gaisford as sole arbitrator in this matter.

23.    On September 18, 2020, Owners invoiced Charterers for USD 114,500 of hire for October 17, 2020 to November 17, 2020 (the "September Invoice"). A copy of this invoice is hereto attached as **EXHIBIT 3**.  In breach of the Bareboat Charter, this invoice was not paid.

24.    On October 13, 2020, Plaintiff received a letter purporting to be from "Bepalo LPG Shipping Limited (formerly B-GAS LIMITED) 32 Miltonos Street 3050, Limassol, Cyprus" stating it was terminating the Bareboat Charter dated June 23, 2014; and that Charterers were discontinuing their business effective as of 15:00 hours on 13 October 2020 and would enter into voluntary winding up proceedings in Cyprus.  Bepalo LPG Shipping Limited asserted it was thereby entitled to terminate the Bareboat Charter party based on its own default, *i.e.* intending to self-declare itself insolvent.  A copy of this notice is hereto attached as **EXHIBIT 4**.

25.    Also, on or about October 13, 2020, Plaintiff received a letter (as an e-mail attachment) purporting to be authored and signed by defendant B-GAS A/S, advising Plaintiff that: (1) Bepalo LPG Shipping Limited (formerly known as B-GAS LIMITED), has declared insolvency under Cypriot law; (2) the financial difficulties of B-GAS LIMITED were attributed to the effect of the Covid-19 pandemic; (3) that the insolvency was the result of one Owner's unwillingness to participate in an accommodation proposed by the bareboat charters;  (4) that "the declaration of insolvency is related to Bepalo, located in Cyprus, only";  and (5) that the commercial management of the following vessels remained with B-GAS A/S: "B-GAS CHAMPION"; "B-GAS COMMANDER"; "B-GAS CRUSADER"; "B-GAS VENUS"; "B-GAS NEPTUNE"; "B-GAS MASTER"; "B-GAS MARINER";  "B-GAS MAUD";  "B-GAS

MARGRETHE". The correspondence was signed by "Andrew Cristian McPhail, Chief Executive Officer, B-Gas A/S." *See* document hereto attached as **EXHIBIT 5**.

26.     On October 15, 2020, Ince responded to Charterers' letter of October 13, 2020, making clear that Charterers' purported termination was invalid and unlawful, as Clause 28(d) gave one party the right to terminate the charter party only if the other party goes into liquidation. Accordingly, though Clause 28(d) gave Owners a right to terminate for Charterers entering into liquidation, it did not provide Charterers a right to terminate on the basis of their own default.  It was made clear that by purporting to terminate the Bareboat Charter party and redeliver the Vessel long before the earliest permissible redelivery date, Charterers were in clear repudiatory/renunciatory breach of the charter party, which would entitle Owners to terminate and claim damages.

27.     No further correspondence was received from Charterers regarding payment of the outstanding September and October Invoices or whether they would continue to perform their obligations under the Bareboat Charter party.

28.     In light of Charterers' failure to pay hire for September and October, with no explanation as to whether payment would ever be made, coupled with their unlawful purported notice of termination and their failure to resile from it, the totality of Charterers' conduct plainly constituted repudiatory and/or renunciatory breaches of the Bareboat Charter.  Accordingly, on October 29, 2020, once Owners had made arrangements to take over physical possession and control of the Vessel (as this was a bareboat charter not a time charter), Owners accepted Charterers' repudiatory and renunciatory breaches and terminated the Bareboat Charter, without prejudice to Owners' rights to claim damages under the Bareboat Charter generally.

## III.   UNDERLYING PROCEEDINGS ON THE MERITS

29.     Plaintiff is pursuing its claim against B-GAS LIMITED in London maritime arbitration as follows.

30.     As a result of Charterers' repudiatory and renunciatory breaches, Owners are entitled to damages resulting from Charterers' breaches, namely (i) outstanding hire and any other sums due to Owners at the date of termination by Owners, and (ii) damages for the non-payment of all future hire that would have been earned by Owners until the end of the minimum period of the Bareboat Charter (less mitigation earnings).

31.     In particular, Owners' claim includes the outstanding hire amount already invoiced in the sum of USD 101,572.58 for the unpaid hire period of September 17, 2020 through October 29, 2020.

32.     In addition, Owners claim operating expenses ("OPEX") between October 13, 2020 and the date of termination, October 29, 2020. Owners consider a figure of USD 4,501 per day to be appropriate, which is based on an average of the Vessel managers' OPEX budget and international auditors' accounts of published OPEX figures. For fourteen (14) trading days, this would equate to expenses of USD 72,016.

33.     Charterers' repudiatory and renunciatory breaches led to the termination of the Bareboat Charter prior to the completion of its minimum charter period of seven (7) years. Owners have therefore been deprived of the hire that would have been earned under the Bareboat Charter from the date of termination to the end of the minimum period, calculated as USD 114,500 per month from October 29, 2020, until June 2, 2022, totaling USD 2,145,952.52.

34.     Owners accept that under English law, they must give credit to Charterers for the earnings achieved by the Vessel from October 29, 2020 until June 2, 2022. There is no available

market rate for an equivalent bareboat charter for this class of vessel for the balance period.  Thus, Owners are currently being forced to trade the Vessel on a "spot" basis rather than a "bareboat" basis.

35.     Owners assess their net mitigation earnings for the remainder of the Bareboat Charter period as follows.  Taking into account substantial OPEX that Owners will incur in order to trade the Vessel in the spot market, they estimate their net mitigation earnings until the charter party redelivery date will be USD 177,414 net earnings (after deduction of OPEX).  Accordingly, Owners' claim for future losses until the end of the minimum period equates to USD 1,968,538.52.

36.     Owners claim compound interest pursuant to rider clause 38 of the Bareboat Charter and/or Clause 11, and/or alternatively s. 49 of the U.K. Arbitration Act 1996, on the sums found to be due to them from the Charterers at 2% over LIBOR, or such other rate, and with such rests, as the London Arbitration Tribunal shall think fit.

37.     The total amount claimed by Owners in London arbitration is, accordingly, as follows:

(1)     Unpaid hire of USD 101,572.58 and USD 72,016 as per ¶¶ 31 and 32 above;

(2)     Damages for breach of the Bareboat Charter of USD 1,968,538.52 as per ¶¶ 33-35 above;

(3)     Interest thereon as aforesaid estimated at the rate of 4.24% over a period of two years.

38.     Plaintiff estimates the legal costs that will be incurred to pursue these claims in London maritime arbitration proceedings will be approximately USD 400,000.00 if the matter is contested by Defendants.  As it is customary in London arbitration, legal costs, including lawyers' fees, are awarded to the prevailing party.

39.     This action is an ancillary proceeding, brought in order to obtain jurisdiction over

Defendant Charterer and to obtain security for Plaintiff's claims in the London arbitration proceedings.

## IV.   STRUCTURE, OWNERSHIP, INTERRELATIONSHIPS AND ASSET MOVEMENTS OF THE CORPORATE AND INDIVIDUAL DEFENDANTS

40.     Plaintiff entered in the Bareboat Charter party with B-GAS LIMITED on the assurance that it would retain its status as a subsidiary of a well-known and creditworthy shipping group that had been in business for over two decades – the BERGSHAV GROUP - of which it was a part.

41.     Approximately one year preceding the repudiation of the Bareboat Charter party, Plaintiff had been approached by Mr. Andreas Hannevik, the chief financial officer of Bergshav Management AS, and manager for the ultimate corporate beneficial owner of B-GAS LIMITED, *i.e.* Bergshav Shipholding AS.  Mr. Hannevik represented to Plaintiff that B-GAS LIMITED was a financially sound corporate entity, with substantial fixed assets, solid business standing and excellent prospects.   Mr. Hannevik was intimately acquainted with the business of B-GAS LIMITED having served, until recently, as its CEO.    Mr. Hannevik approached Plaintiff's manager with the aim to sell B-GAS LIMITED to Plaintiff.  *See* e-mail correspondence of Mr. Hannevik hereto attached as **EXHIBIT 6**.

42.     In accordance with the 2018 audited financial report of B-GAS LIMITED for the year ending December 31, 2018, a copy of which was attached to EXHIBIT 6, and is hereto attached as **EXHIBIT 7**, B-GAS LIMITED owned the following assets:  (1) B-GAS A/S of Denmark, which was the commercial manager of the vessels owned or chartered-in by B-GAS LIMITED (EXHIBIT 7 at pp. 10, 32, 34); and (2) the LPG vessels: "B GAS CRUSDAER", "B GAS COMMANDER", and "B GAS CHAMPION" (*Id.* at p. 33).

43.     In accordance with the said audited account of B-GAS LIMITED for 2018: "The Company is controlled by Bergshav Shipping Ltd, incorporated in Cyprus, which owns 51% of the Company's equity share capital."   "The ultimate controlling party is Mr. Atle Bergshaven." *Id.* at p. 36.

44.     The directors of B-GAS LIMITED in 2018 included Mr. Atle Bergshaven; Mr. Nicolai Eirik Lorentzen; and Mr. Vryonis Kyperesis.

45.     The foregoing representations in the audited financial report of B-GAS LIMITED, which were filed with the Cyprus Companies' Register, were consistent with the audited financial report filed by the said company for the earlier years it was bareboat charterer of the ECO LOYALTY.   *See e.g.* 2015 audited annual report hereto attached as **EXHIBIT 8** identifying the same assets and corporate control at p. 10, Note 1; and at p. 21, Note 6.

46.     Based on the recently reported, purportedly precipitous, deterioration of the financial position of B-GAS LIMITED, and its alleged insolvency, Plaintiff made enquiries into publicly filed records of this company; its parent company Bergshav Shipping, Ltd, its subsidiary B-GAS A/S, and other related corporate entities to ascertain the veracity thereof. The inquiry revealed the following changes which, unbeknownst to Plaintiff, had occurred within less than one year before B-GAS LIMITED experienced its alleged economic difficulties.

47.     In January 2020, the legal ownership of the shares of B-GAS A/S was transferred by B-GAS LIMITED to Bergshav Management Co., A.S. (51% of the shares thereof), with the remaining shares being transferred to Allin Investment AG of Switzerland and Lorentzen Skibs, A/S.  However, Atle Bergshaven remained the beneficial owner of B-GAS A/S.  The board of directors of B-GAS A/S has Atle Bergshaven and Nicolai E. Lorentzen as members. *See* report of

the Danish Business Authority, dated November 2, 2020 hereto attached as **EXHIBIT 9** at pp. 2-3.

48.     On or about July 10, 2020, B-GAS LIMITED transferred the ownership of its vessels "B-GAS CRUSDAER"; "B-GAS COMMANDER"; and "B-GAS CHAMPION" to LPG Invest A/S.  LPG Invest A/S is a private company established on or about June 4, 2020 in Norway with its address at Hasseldalen 2, 4878 Grimstad. Norway.  *See* copies of the respective "History" pages from shipping database "Equasis" of the transfer of all three vessels hereto attached as **EXHIBIT 10**, showing the respective transfers from B-GAS LIMITED to LPG Invest A/S.  *See also* Intertanko Q88 reports regarding these three (3) vessels showing their new registered ownership hereto attached as **EXHIBIT 11**.

49.    A copy of the incorporation documents of LPG Invest A/S from the Norwegian Corporate Register is hereto attached with their free translation in English as **EXHIBIT 12**.  Its parent company is Bergshav Invest A/S.

50.    Bergshav Invest A/S is a holding company, whose parent company is Bergshav Shipholding A/S.  The chairman of Bergshav Invest A/S is Atle Bergshaven who is also the chairman of Bergshav Shipholding A/S.  Both companies have their place of business at Hasseldalen, 4878 Grimstad, in Norway.   A copy of the Norwegian Corporate Register showing the annual accounts of Bergshav Shipholding A/S is hereto attached together with its free translation in English as **EXHIBIT 13**.   Note 4 in EXHIBIT 13 (p. 31/41 also PDF p. 58) shows Bergshav Invest A/S is 100% owned by Bergshav Shipholding A/S.

51.     On June 6, 2020, B-GAS Holding Ltd. was formed in Cyprus, with Atle Bergshaven and Vryonis Kyperesis as directors.   A copy of the certificate of incorporation of B-GAS Holding Ltd., together with its translation in English, is hereto attached as **EXHIBIT 14**.   A copy of the

Articles of Incorporation of B-GAS Holding Ltd., together with its translation in English, is hereto attached as **EXHIBIT 15**.   Under the Articles of Incorporation, the owner of the entire authorized and issued stock of B-GAS Holding, Ltd is Bergshav Shipholding A/S, which holds 1,000 shares of common stock.  EXHIBIT 15 at pp. 6 (English translation at pp. 9-10).  The sole director of B-GAS Holding, Ltd. is Bergshav Shipholding AS, signing by its director Atle Bergshaven. *Id.* at p. 16 (English translation at p. 25).

52.     On June 5, 2020, Bergshav Shipping Ltd transferred to B-GAS Holding Ltd. all of its shares in B-GAS LIMITED.  A copy of the transfer document from the Cyprus Corporate Register records whereby this transaction was effected, with its translation in English, is hereto attached as **EXHIBIT 16.**

53.     On October 15, 2020, B-GAS LIMITED changed its name in the Cypriot Corporate Register and thereby renamed itself: "Bepalo LPG Shipping Limited" A copy of the corporate name-change act whereby the corporate name change was effected, with its translation in English, is hereto attached as **EXHIBIT 17**.

54.     On or about October 23, 2020, Plaintiff received through chartering brokers a document generated on October 12, 2020 consisting of an e-mail dated October 22, 2020, signed by one Augoustinos Papathomas, liquidator, and an attachment captioned "Statement of Affairs signed by Atle Bergshaven."  A copy of the said document is hereto attached as **EXHIBIT 18.**

55.     In consequence of the action of the Defendants set out in the foregoing ¶¶ 47 to 54, the defendants who had the beneficial and legal control over B-GAS LIMITED, namely Atle Bergshaven and Bergshav Shipholding A/S, stripped B-GAS LIMITED of all of its valuable assets, *i.e.* its subsidiary B-GAS A/S and the vessels "B-GAS CRUSDAER"; "B-GAS COMMANDER"; and "B-GAS CHAMPION" and transferred same to other corporate entities that the said

defendants owned and /or controlled.  The stripping and shifting of assets as described in the foregoing is immediately evident by comparing the corporate and asset-holding structure of B-GAS LIMITED before 2020, as schematically represented below in Table I, and what it became in 2020, starting in January 2020, and within six months thereafter, by July 2020, as is schematically represented below in Table II.

TABLE I

TABLE II



56.    As a result of the stripping off and transferring of the assets of B-GAS LIMITED, the said Defendant was left entirely without means to pursue its business and generate revenue in order to meet the obligations it had undertaken to Plaintiff.  More specifically, Defendant B-GAS LIMITED was, at all times material hereto, no more than a mere holding company, incorporated in Cyprus without any business organization of its own, such as offices or personnel that conducted its every day commercial and operating business, or finding and pursuing employment for the vessels it nominally operated.  Such business was performed entirely by and through the former subsidiary of B-GAS LIMITED *i.e.* B-GAS A/S in Copenhagen, Denmark.

57.    As a result of the stripping off and transferring of the three (3) owned-vessels of B-GAS LIMITED to LPG Invest A/S, an indirect subsidiary of Bergshav Shipholding A/S formed

less than three-and-one-half months preceding the repudiation of the Bareboat Charter and its "voluntary" winding up, B-GAS LIMITED was deprived of its means of generating revenue that would sustain it as a going concern.  Instead, the three (3) vessels it owned were put in the service of LPG Invest A/S (supra. at ¶ 48 and EXHIBIT 10) which is ultimately controlled by defendants Atle Bergshaven and Bergshav Shipholding A/S.

58.     The alleged winding up of B-GAS LIMITED, which Defendants represent was set in motion by creditors, included among such "creditors" a significant majority of corporate entities affiliated and/or closely related to defendants Atle Bergshaven and Bergshav Shipholding AS, including the following: "LPG Invest A/S"; "Bergshav Shipping Ltd"; "B-GAS MAUD, LTD."; "B-GAS AS".  *See* unsecured creditors in Statement of Affairs hereto attached as **EXHIBIT 18.**

59.     The restructuring of the ownership of the corporate interests and fixed asset-holdings illustrated in the foregoing Table I and Table II, was, as pled in the foregoing  ¶¶ 47-58, a methodically planned enterprise undertaken by the interests that controlled B-GAS LIMITED, including defendant Bergshav Shipholding A/S and its chairman and majority shareholder Atle Bergshaven, to extricate, take over, and ringfence all of the valuable assets of B-GAS LIMITED, putting them to their own use and benefit and depriving Plaintiff and other creditors who might have been similarly situated from any meaningful recourse.

60.     The change of the corporate name of B-GAS LIMITED to "Bepalo LPG Shipping Limited" was part and parcel of the design of the defendants who controlled same, to continue operating in the same business as they have done for several years through B-GAS A/S, under the well-known "B-GAS" brand,  without being affected by the taint of the winding up of B-GAS LIMITED.

i.      *Corporate veil piercing allegations*

61.     At all times material hereto, there was considerable overlapping in the share ownership of Plaintiff's contractual obligor B-GAS LIMITED and the other entities and individuals made defendants hereunder.  As noted in the foregoing ¶ 43, the majority of the ownership (51% or greater) of the said obligor was held by Bergshav Shipping Ltd.

62.     At all times material hereto and preceding the transfer of B-GAS A/S to Bergshav Management Co. A/S, B-GAS LIMITED was its 100% controlling parent.  Supra ¶ 42.  However, after the January 2020 sale to Bergshav, the control over B-GAS A/S passed to Bergshav Management Co. A/S (51% of the shares thereof) with the remaining shares being transferred to Allin Investment AG of Switzerland and Lorentzen Skibs, A/S.  Nevertheless, the beneficial owner of B-GAS A/S remained with Atle Bergshaven.  *See* Supra ¶ 47.  In turn, Bergshav Management Co A/S is owned by Bergshav Invest A/S.  *See* 2019 Annual Accounts of Bergshav Invest A/S from Norwegian Company Register hereto attached along with a free translation in English as **EXHIBIT 19** at p. 9, Note 3.  Bergshav Invest A/S is owned 100% by Bergshav Shipholding A/S, which owns all 500 of its authorized and issued shares as noted in EXHIBIT 19 at p. 2, and at Notes 6 and 7 thereof.   As noted in the foregoing ¶ 51, Bergshav Shipholding A/S also owns the entire authorized and issued share capital of B-GAS Holding, Ltd.

63.      In all of their permutations, defendants B-GAS LIMITED; B-GAS A/S; Bergshav Shipping, Ltd,; B-GAS Holding Ltd.; and LPG Invest A/S have had common and overlapping officers and directors including Nicolai Eirik Lorentzen and the ubiquitous Atle Bergshaven being the chairman of the board and/or a director of the said corporate entities  (*see e.g.* supra. ¶¶ 44, 47, 51); and also the chairman of the board of Bergshav Shipholdings A/S (supra. ¶¶ 49, 50, 59) and Bergshav Invest A/S (Supra. ¶ 50).

64.     At all times material hereto, the following defendants and associated non-parties had a common address in Norway at Hasseldalen, NO-4878 Grimstad, Norway: Bergshav Shipholding A/S; Bergshav Shipping A/S; Bergshav Invest A/S; Bergshav Management Co. A/S; LPG Invest A/S.

65.     At all times material hereto, the following Cypriot defendant and related entities had their business address and registered office in the Republic of Cyprus at Miltonos 32, 3050, Limassol, Cyprus: B-GAS LIMITED; Bergshav Shipping Ltd; B-GAS Holding, Ltd.

66.     At all times material hereto, the trading assets of defendant B-GAS LIMITED were stripped off by its controlling defendants as specifically plead in the foregoing, leaving the said defendant severely undercapitalized, thereby rendering it incapable of carrying on business and generate the revenue necessary to meeting its obligations to creditors, including Plaintiff.

67.     At all times material hereto, defendant B-GAS LIMITED, though being held out as the principal corporate entity that contracted with Plaintiff and obligated itself as the party "charterer" under the Bareboat Charter party, was in actual fact a mere holding company and a sham for its respective shareholders who held the legal interest in the business, *i.e.* Bergshav Shipping, Ltd (51%);  Lorentzen Skibs A/S (10%); and Pareto Maritime Secondary Opportunity Fund SA (39%).  The actual conduct of the business, including all of its operational and commercial matters, were conducted by and through the 100% subsidiary of B-GAS LIMITED, B-GAS A/S in Copenhagen, Denmark.

68.     At all times material hereto, according to the audited annual reports of B-GAS LIMITED filed of record with the corporations' regulatory authority of Cyprus, the ultimate controlling party of B-GAS LIMITED was Atle Bergshaven.  EXHIBIT 7 at p. 36, ¶ 23.

69.     Though registered in Cyprus and nominally maintaining an office there at Miltonos 32, 3050, in the city of Limassol, B-GAS LIMITED did not operate any of its business in that or any other location in Cyprus.  The business address it listed was a virtual address at a building known as Hartmann House and its Cyprus-resident directors were nominees - several of them providing their services as part of the rent-a-director offshore corporate business which is available for a fee.

70.     At all times material hereto, and until B-GAS LIMITED transferred its wholly owned subsidiary B-GAS A/S to new ownership as noted in the foregoing ¶ 48, B-GAS LIMITED and B-GAS A/S filed consolidated accounts.  *See e.g.* EXHIBIT 7.

71.     In consequence of the foregoing averments in ¶¶ 1-70, B-GAS LIMITED was used by the defendants who controlled it to commit fraud or injustice on Plaintiff, by transferring its assets to entities controlled by defendant Atle Bergshaven and his various corporate surrogates, including Bergshav Shipholding A/S.

## V.     <u>DEFENDANTS' CORPORATE IDENTITY</u>

72.     The Defendants describe themselves as follows: "The Bergshav Group is comprised of two main activities. The core shipping business is fronted by Bergshav Management, whilst Bergshav Property has involvement in various real estate-related projects. Bergshav Management AS is an integrated shipping company with its total resources dedicated within chartering and operation, technical management, project development and finance. Long-term devotion to shipping, combined with close follow-up of all assets, will ensure stability and thereby maximize the return to the vessels' owners. Such return is secured by the highest level of human competence and expertise in all areas of operation."   A copy of this statement from the Bergshav website (https://bergshav.no/about-us/) is hereto attached as **EXHIBIT 20**.

73. At another page of the Bergshav Group website, *i.e.* https://bergshav.no/shipping/fleetlist/, Bergshav Group lists the fleet of vessels it is presently trading. A copy of the said fleet-list from the Bergshav Group website is hereto attached as **EXHIBIT 21**.

74. Significantly, Defendants operate a number of LPG carriers under the "B-GAS" brand as part of the said fleet of vessels, as they did when they operated through the corporate entity B-GAS LIMITED, with several of these being the same vessels that were operated by B-GAS A/S when it was operating as a wholly owned subsidiary of B-GAS LIMITED.

75. Notwithstanding their formal separate incorporation, the corporate defendants, together with the individual defendant, comprise in actual fact a single business enterprise pursuing functionally differentiated business objectives through nominally separate business structures, but always subject to the command and control of defendants Atle Bergshaven and Bergshav Shipholding A/S, who have acted and are continuing to act as the controlling mind of the respective corporate organization.

76. Even though the vessels in the fleet of the Bergshav Group were registered in the name of various individual corporate entities;[1] Bergshav Shipholding A/S and Atle Bergshaven beneficially owned and operated these vessels as assets of a single business enterprise. The purported corporate independence of the respective "SPV" vessel owners was simply fictitious, as they were entirely subjugated to Bergshav's business goals and policies, which were implemented by Bergshav's management and staff.

77. In this process, the various "Bergshav" corporate entities were mere limbs and organs of a larger corporate organism as evidenced by the common business strategy as evidenced

---

[1] Referred to by the said defendant as an "SPV", *i.e.* a "special purpose vehicle." *See* EXHIBIT 4 at pp. 29, 170

by the shuffling and transferring of assets and internal restructuring of ownership in 2020; culminating with the extra-judicial winding up of B-GAS LIMITED.

## V. APPLICATION FOR ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

78.     None of the Defendants are present or can be found in the District within the meaning of Supplemental Rule B. *See* Attorney Declaration of George Gaitas attached hereto as **EXHIBIT 22**.  Nevertheless, Defendants have within the District tangible or intangible personal property in the hands of parties who may be named garnishees in the process of maritime attachment and garnishment consisting of debts, credits, or effects.

79.     More particularly the M/T BERGITTA, a tanker vessel with IMO No. 9336426 and international call sign C6WM5 owned by Defendants, is or will soon be within the Southern District of Texas and is expected to berth therein.

80.     Defendants Bergshav Shipholding A/S and Atle Bergshaven used and are continuing to use their purported separateness, and the purported separate incorporation of its surrogate subsidiaries B-GAS LIMITED;  Bergshav Shipping A/S; Bergshav Shipping, Ltd.; B-GAS A/S; and Bergshav Management Co. A/S, abusively to engage in fraudulent corporate restructuring and asset reallocation practices to avoid paying agreed and accrued hire for the ECO LOYALTY, and to evade with impunity their obligations arising from their repudiation under the Bareboat Charter.

81.     Defendant B-GAS LIMITED has contracted with Plaintiff, and is using completely dominated surrogate shell entities Bergshav Shipping A/S; Bergshav Shipping, Ltd.; B-GAS A/S; Bergshav Management Co. A/S as alter-egos of the Bergshav Group principal entity Bergshav Shipholding A/S, and its controlling shareholder and director Atle Bergshaven, intending to reap all the benefits of carrying on business but paying none of the costs.  Defendants are, accordingly,

using the corporate form abusively, *i.e.* to perpetrate fraud and commit other injustice.  It would be, accordingly, fair and equitable to pierce (or reversely pierce) the corporate veil of Bergshav Shipping A/S; Bergshav Shipping, Ltd.; B-Gas AS; Bergshav Management Co. A/S; and Bergshav Shipholdings A/S in order to reach the economic value of the M/T BERGITTA which said Defendants have compartmentalized in separate corporate pockets, to the detriment of Plaintiff.

82.    Alternatively, Defendants having operated, at all relevant times, as a single enterprise, and being the *alter ego* of each other in the circumstances set in the above and foregoing Original Verified Complaint, it would be fair and equitable for any asset of this enterprise to be subject to the claims of judgment creditors of the enterprise, such as Plaintiff, and for any such assets to be attached as security for Plaintiff's maritime claims.

83.    Plaintiff has maritime claims against the Defendants arising out of maritime contract (*i.e.* the bareboat charter party with B-GAS LIMITED dated June 23, 2014).

84.    The amount of Plaintiff's claim as reasonably as it can be estimated is as follows:

A. Charter Hire duly invoiced before defendants' repudiation $       114,500.00

B.  Operating expenses as pled in ¶ 32 ....................................$       72,016.00

C.  Loss of earnings from premature termination of the charter. $    1,968,538.52

D.  Interest estimated on the principal amount over two years. $     199,674.00

E.  Estimated arbitration costs…………………………………$       400,000.00

85.    Therefore, Plaintiff's total claim for breach of the maritime contracts against Defendants is in the aggregate sum of USD 2,754,728.52.

**WHEREFORE PREMISES CONSIDERED**, Plaintiff prays as follows:

A.      That process in due form of law, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction be issued against Defendants and said Defendants be cited to appear and answer the allegations of this Original Verified Complaint;

B.      That since the Defendants cannot be found within this District pursuant to Supplemental Rule B, all of the assets of the Defendants presently within this District, or assets expected in this District during the pendency of this action, including, but not limited to, the M/T BERGITTA and/or any assets within the possession, custody or control of any other garnishee upon whom a copy of the Process of Maritime Attachment and Garnishment issued in this action may be served, be attached and garnished in an amount sufficient to answer Plaintiff's claim;

C.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

D.      That judgment be entered against each of the Defendants in the sum of Two Million Seven Hundred Fifty Four Thousand Seven Hundred Twenty Eight Dollars and Fifty Two Cents (**USD 2,754,728.52**), together with interest and costs, and the proceeds of the assets attached be applied in satisfaction thereof;

E.      That the Court grant such other and further relief as it deems, just, equitable and proper.

Respectfully submitted,

Dated: January 26, 2021                             GAITAS & CHALOS, P.C.
Houston, TX

By:      /s/ George A. Gaitas
         George A. Gaitas
         State Bar No. 24058885
         Federal Bar No. 705176
         Jonathan M. Chalos

23

State Bar No. 24097482
Federal Bar No. 3008683
1908 N. Memorial Way
Houston, Texas 77007
Telephone: 281-501-1800
Fax: 832-962-8178
E-mail: gaitas@gkclaw.com
            chalos@gkclaw.com


*Attorneys for Plaintiff*
K INVESTMENTS, INC.