UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| K INVESTMENT, INC., *et al.*, | § § | |
| Plaintiffs. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:21-CV-00016 |
| B-GAS LIMITED A/K/A/ BEPALO LPG SHIPPING, LTD, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION[1]

Before the court is Defendants' Motion to Vacate Rule B Attachment as to All Consolidated Actions, and Request for Expedited Relief ("Motion to Vacate"). *See* Dkt. 15. Having reviewed the briefing, the evidentiary record, and the applicable law, I recommend that the Motion to Vacate be **GRANTED**.

## BACKGROUND

Plaintiffs K Investments, Inc., Sikousis Legacy Inc., and Bahla Beauty Inc. (collectively, "Plaintiffs") each entered bareboat charter agreements with B-Gas Limited, now known as Bepalo LPG Shipping Ltd ("Bepalo"). Plaintiffs allege that Bepalo tried to negotiate a reduction in charter-hire rates due to financial difficulties brought on by the COVID-19 pandemic. When Plaintiffs refused to re-negotiate the charter-hire rates, Bepalo wound up its business and delivered the

---

[1] A motion to vacate a maritime attachment is ordinarily treated as a nondispositive matter. *See Kite Shipping LLC v. San Juan Nav. Corp.*, No. 11CV02694 BTM (WVG), 2012 WL 4049936, at *4 (S.D. Cal. Sept. 13, 2012) ("Ordinarily, an order vacating a maritime attachment is reviewed for abuse of discretion, although legal conclusions underpinning the order are reviewed de novo."). Here, however, the effect of my ruling will deprive this Court of jurisdiction, seemingly converting my ruling into a dispositive matter. In an abundance of caution, I have written a Memorandum and Recommendation. *See id.* ("[T]he Court agrees . . . that [Defendant's] original motion to vacate the attachment is a dispositive motion within the meaning of Rule 72(b) of the Federal Rules of Civil Procedure, since the effect of an order to vacate the attachment is to deprive the Court of jurisdiction.").

vessels to their owners. Each Plaintiff then filed suit against Bepalo for breach of contract. At the parties' request, those three lawsuits were consolidated.

Plaintiffs contend that Bepalo is the alter-ego of several different entities and individuals, including B-Gas AS; Bergshav Shipping Ltd; Bergshav Shipholding AS; Bergshav Shipping AS; B-Gas Holding Ltd; and Atle Bergshaven. Plaintiffs used this alter-ego allegation and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Admiralty Rules") to attach a security interest to the M/T BERGITTA, a vessel owned by non-party Bergshav Shipping AS.

Since the attachment occurred, Bergshav Shipping AS has made a restricted appearance under Rule E(8) of the Supplemental Admiralty Rules. Bergshav Shipping AS has issued a letter of undertaking satisfactory to Plaintiffs, and Plaintiffs have released the M/T BERGITTA. Shortly after releasing the vessel, Bergshav Shipping AS moved to vacate the Rule B attachment and requested a Rule E(4)(f) hearing on the matter. In the Motion to Vacate, Bergshav Shipping AS attacked only the sufficiency of Plaintiffs' alter-ego allegations. But, at the Rule E(4)(f) hearing, Bergshav Shipping AS added to its argument, contending that Plaintiffs' pleadings were not in fact verified, as required under Rule B. Because this new argument was potentially dispositive and had not been briefed, I ordered the parties to submit additional briefing on this limited issue.

Consequently, at this stage, Bergshav Shipping AS has two grounds on which it seeks to vacate the attachment. First, it contends that the attachment must be vacated because the verification attached to Plaintiffs' respective pleadings is fatally deficient. Second, Bergshav Shipping AS argues that Plaintiffs' alter-ego allegations are insufficient to allege a prima facie case.[2]

---

[2] I do not reach this argument.

2

## HOW THE ATTACHMENT PROCESS WORKS

A.  ATTACHMENT UNDER SUPPLEMENTAL ADMIRALTY RULE B

Supplemental Admiralty Rule B provides, in pertinent part:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

FED. R. CIV. P. ADM. SUPP. R. B(1)(a).

A maritime attachment of property under Rule B is authorized when a plaintiff complies with Rule B's filing, notice, and service requirements and establishes that: "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (footnote omitted), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). If these requirements are satisfied at the Rule B application stage, the district court "must enter an order authorizing the attachment." *Id.* at 438. The vessel may then be seized.

B.  POST-SEIZURE HEARING UNDER SUPPLEMENTAL ADMIRALTY RULE E

After an attachment order has been issued, a defendant or "any person claiming an interest" in the restrained property, may move to vacate the attachment and demand a "prompt hearing." FED. R. CIV. P. ADM. SUPP. R. E(4)(f). *See also Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 50 (2d Cir. 2008) ("After the requirements of Rule B have been met, and attachment has occurred, defendants have the opportunity under Rule E(4)(f) to contest the attachment of their property before the district court."). The Rule E(4)(f) hearing "is designed to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a prompt post-seizure hearing at which [the

3

property owner] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." *Id.* at 51 (quoting FED. R. CIV. P. ADM. SUPP. R. E(4)(f), Advisory Committee's Note to 1985 Amendment). "At the Rule E(4)(f) hearing stage, the burden rests with the plaintiff to show that the requirements of Supplemental Rules B and E have been satisfied." *Knox v. Hornbeck Offshore Servs., LLC*, No. 3:19-CV-00181, 2019 WL 3202296, at *2 (S.D. Tex. July 16, 2019). "[D]istrict courts have often initially granted attachment and then used Rule E hearings to determine whether the requirements of Rule B were in fact met." *DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH & Co Tankschiff KG v. Essar Cap. Americas Inc.*, 882 F.3d 44, 49 (2d Cir. 2018).

## DISCUSSION

Rule B expressly requires a verified complaint. *See* FED. R. CIV. P. ADM. SUPP. R. B(1)(a). A verified complaint is one in which a witness swears under penalty of perjury that the statements in the pleading are true and correct. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992) (verification is confirmation of truth by affidavit or oath); *Stewart v. Guzman*, 555 F. App'x 425, 431–32 (5th Cir. 2014) (facts alleged in complaint considered where party "attached a signed declaration to his complaint, stating that, 'under the penalty of perjury,' the facts alleged in his complaint were 'true and correct'"); *Noble Res. Pte. Ltd v. Metinvest Holding Ltd.*, 622 F. Supp. 2d 77, 83 n.9 (S.D.N.Y. 2009) ("As this Court has repeatedly had occasion to state in the context of maritime attachment actions, counsel proceeding on an *ex parte* basis have a special obligation to ensure that the representations they are making to the Court, *and the facts they are verifying in a verified complaint, are true*." (emphasis added)). To fulfill this obligation, each Plaintiff attached to its complaint a verification signed by

4

Christian Krohn-Hansen ("Krohn-Hansen"), which purported to verify the attendant complaint.[4] Each verification provides:

> Pursuant to 28 U.S.C. § 1746, Christian Krohn-Hansen, declares under the penalty of perjury:
>
> 1. I am an individual of sound mind, and have never been convicted of a crime of moral turpitude.
>
> 2. I am a resident of Athens, Greece and a lawful representative of the Plaintiff in the above action and duly authorized on its behalf to make this verification.
>
> 3. I have read the foregoing Verified Complaint and exhibits thereto in the above captioned action and know the contents thereof; and
>
> I declare under the penalty of perjury that the foregoing is true and correct.

Dkts. 17-1, 18-1, 19-1.

Bergshav Shipping AS argues that Krohn-Hansen's verifications are ineffective because he does not affirm the veracity of the facts alleged in the respective complaints; instead, he merely confirms that he read and understood the contents of the "Verified Complaint and exhibits thereto." Dkt. 35 at 4–5 (discussing Krohn-Hansen's verification). In response, Plaintiffs contend that the verification language used by Krohn-Hansen tracks the language used in 28 U.S.C. § 1746 and, regardless, any "errors in the wording of the verification of a Rule B Complaint do not warrant vacatur of the attachment." Dkt. 37 at 3.

Right out of the gate, I agree with Plaintiffs that the language used in Krohn-Hansen's verifications track the language contained in § 1746. In pertinent part, § 1746 provides:

---

[4] Each Plaintiff filed an Original Verified Complaint in separate cases. In all three suits, each Plaintiff attached a verification signed by Krohn-Hansen. *See* Dkt. 1-1 (3:21-cv-16); Dkt. 1-1 (3:21-cv-17); Dkt. 1-1 (3:21-cv-18). After I consolidated the three cases, each Plaintiff filed its own Amended Verified Complaint in this suit, attaching a new verification signed by Krohn-Hansen. *See* Dkts. 17–19. The new verifications contained a single modification distinguishing between Krohn-Hansen's residency and citizenship. *See* Dkts. 17-1, 18-1, 19-1. This minor change has no bearing on my discussion.

> Wherever, under any law of the United States . . . any matter is required or permitted to be . . . proved by . . . verification, . . . such matter may, with like force and effect, be . . . proved by . . . verification . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

The critical inquiry, however, is not whether the language of the verifications track § 1746. The ultimate question is, "what exactly did Krohn-Hansen verify?" This is where Krohn-Hansen's verifications fall short.

A close reading of Krohn-Hansen's verifications reveal that he has not verified the contents of the relevant complaints. Krohn-Hansen's verifications merely recite facts concerning his mental status, moral standing, citizenship and residency, and capacity to act on behalf of Bergshav Shipping AS. Krohn-Hansen then attests that he has "read the foregoing Verified Complaint and exhibits thereto in the above captioned action and know[s] the content thereof." Dkts. 17-1 at 1. Immediately following those factual attestations, Krohn-Hansen "declare[s] under the penalty of perjury that the foregoing is true and correct." *Id.* Based on my reading, this statement concerning the penalty of perjury specifically refers to the factual attestations contained in the respective verification. Notably absent is any factual attestation that the facts alleged in the Verified Complaint are true and correct. In other words, as argued by Bergshav Shipping AS: "each verification lacks the critical and essential statement that the declarant believes the factual allegations in the related complaints to be true and correct." Dkt. 38 at 2 (emphasis omitted).

Plaintiffs attempt to sidestep this conclusion by arguing that the word "foregoing" should be read to apply to the attendant Verified Complaint, as opposed to the three paragraphs immediately above the attestation. I am unpersuaded. This argument highlights the exact problem created when a

verification does not explicitly identify the facts that are being verified. The result is a verification that is largely without meaning, because in the face of crafty lawyering, the language can be said to mean anything, everything, or nothing. Fortunately, as I have explained above, I think it's crystal clear that Krohn-Hansen did not verify the factual statements contained in the Verified Complaints. But more damning than my own interpretation is Krohn-Hansen's testimony at the Rule E(4)(f) hearing. Krohn-Hansen testified that when he signed the verifications, he did not verify the truth of the allegations set forth in the complaints, only that he had read the complaints and the exhibits. Krohn-Hansen testified as follows regarding the verifications that were attached to Plaintiffs' three Original Verified Complaints:

> Q   And, again, it's a fair statement to say that you did not verify the truth of the allegations in the Original Complaint, only that you had read the original verified Complaint and the exhibits thereto, correct?
>
> A   Correct.

Dkt. 33 at 44. And Krohn-Hansen testified as follows regarding the verifications that were attached to Plaintiffs' three Amended Verified Complaints:

> Q   And is it fair to say, sir, from that, that at the time that you executed that verification on the 22nd of March, 2021, that you did not verify the truth of the allegations set forth in the verified Complaint, only that you had read the verified Complaint and the exhibits, correct?
>
> A   Correct.

*Id.* at 43. Consequently, I find that Plaintiffs' Complaints are not verified in accordance with Rule B. This leaves only one question: what happens now?

"Both Supplemental Rule B(1) and Supplemental Rule C(2) require that an action of this sort *be instituted by means of a verified complaint.*" *Amstar Corp. v. M/V Alexandros T.*, 431 F. Supp. 328, 334 (D. Md. 1977) (emphasis added),

7

*aff'd sub nom. Amstar Corp. v. S/S ALEXANDROS T.*, 664 F.2d 904 (4th Cir. 1981). Courts have found that, in the admiralty context, the filing of a verified complaint is a jurisdictional prerequisite. *See Goodwin v. Rios Tropicales, S.A.*, No. 04-22707 CIV, 2005 WL 8149246, at *4 (S.D. Fla. Nov. 18, 2005) (considering a motion to vacate a Rule B attachment and explaining "[t]he Supplemental Admiralty Rules . . . require that a complaint be verified as a jurisdictional prerequisite of the issuance of a writ of attachment"); *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 637 (9th Cir. 2002) (considering a Rule C(2) *in rem* action and explaining "controlling precedent dictates that Appellants' failure to verify their complaint deprived the district court of *in rem* jurisdiction"); *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1090 (5th Cir. 1982) (explaining that "Supplementary Rule C(2) . . . requires the filing of a verified complaint as a prerequisite to obtaining in rem jurisdiction"). *See also DS-Rendite*, 882 F.3d at 47–48 (collecting authorities and explaining that although Rule B states that it applies to an *in personam* action, it is appropriately styled a *quasi in rem* action). "An unverified complaint is jurisdictionally defective and must be dismissed." *Goodwin v. Rios Tropicales, S.A.*, No. 04-22707-CIV, 2005 WL 8149245, at *1 n.1 (S.D. Fla. Nov. 1, 2005) (discussing Rule B attachment).

In the briefing, the parties go back and forth discussing purported differences between Rule B and C of the Supplemental Admiralty Rules. I have compared the Rules and see no difference warranting two distinct jurisdictional inquiries. Thus, I find that the appropriate result here is that the attachment under Rule B must be vacated, Bergshav Shipping AS's property should be released, and the suit should be dismissed for lack of jurisdiction. *See DS-Rendite*, 882 F.3d at 48 ("Once that property or its substitute security is released, the court has no jurisdiction over the defendant." (cleaned up and collecting authorities)).

8

## CONCLUSION

For the reasons explained above, I recommend that Bergshav Shipping AS's Motion to Vacate (Dkt. 15) be **GRANTED**; substitute security (Dkt. 11) be **RELEASED**; and this consolidated suit be **DISMISSED** for lack of jurisdiction.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 4th day of June 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE