IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| K INVESTMENTS, INC., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | C.A. No. 3:21-cv-16 |
| B-GAS LIMITED A/K/A BEPALO LPG SHIPPING, LTD, ET AL., | § § § § | Admiralty |
| Defendants | § § | |

**RESPONSE TO PLAINTIFFS' OBJECTIONS
TO MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION**

Pursuant to its restricted appearance under Supplemental Admiralty Rule E(8), Defendant Bergshav Shipping AS responds as follows to Plaintiffs' objections to the Memorandum and Recommendation ("M&R") [Dkt. 40] of Magistrate Judge Andrew M. Edison. Defendant submits that Plaintiffs have failed to show any grounds for this Court to reject or otherwise modify the Magistrate's suggested disposition of this matter. Specifically,

- The failure to properly verify a complaint seeking attachment or arrest under Supplemental Admiralty Rules B and C is a jurisdictional defect that requires dismissal.

- Plaintiffs mischaracterize their deficient verifications as a minor "technical error," and seek leave, if necessary, to supplement their complaints with amended verifications which "add[] the word(s) that the Court considers essential." However, the Magistrate's M&R makes clear that it is the <u>substance</u> of the "verifications" where Plaintiffs' fail, and not any issue with the mere form of the verification language used.

- Plaintiffs' objections simply ignore the critical testimony during the Rule E(4)(f) hearing from their own witness, Mr. Christian Krohn-Hansen,

- wherein he explicitly confirmed that he did not verify the truth of the allegations in Plaintiffs' complaints, but instead had only read the complaints and their exhibits.

- Moreover, Krohn-Hansen also disclaimed any ability to explain why Defendant, a stranger to the three (3) charter parties at issue, should be the target of Plaintiffs' suits. (e.g., "I cannot say I remember what Bergshav Shipping AS did specifically.")

- In light of the fact that Krohn-Hansen did not verify the complaints at the time of their filing and, based on his subsequent testimony, lacked the requisite knowledge to do so, and because a court's jurisdiction is determined by the circumstances at the time of filing the suit, Plaintiffs cannot cure their deficient verifications now.

Finally, even assuming *arguendo* that the Magistrate's M&R is somehow in error (which is denied), this Court can and should still vacate the attachments and dismiss all of Plaintiffs' actions based on the arguments contained in Defendant's Motion to Vacate [Dkt. 15] and Reply to Plaintiffs' Response in Opposition [Dkt. 22],[1] which the Magistrate did not reach given his determination that Plaintiffs' verifications were fatally defective.[2]

## I. BACKGROUND

Briefly, each Plaintiff has alleged the breach of charter parties (i.e., contracts) held by each respective Plaintiff with B-Gas Limited, now known as Bepalo LPG Shipping Ltd ("Bepalo"), the counter party in each of the three contracts. Plaintiffs allege that Bepalo attempted to negotiate a reduction in charter-hire rates due to financial difficulties brought

---

[1] Namely, that (1) Plaintiffs' have failed to allege a *prima facie* claim against Defendant, where their alter-ego allegations do not allege any involvement in the underlying fraud or wrong (i.e., the alleged asset stripping from Bepalo) by Bergshav Shipping AS and (2) undisputed evidence in the form of a shareholders agreement formalizing minority shareholder rights, which prevents any finding of the requisite "domination and control" threshold required to pierce the corporate veil. Rather than rehash those arguments, Defendant instead incorporates its prior filings [Dkts. 15 and 22] by reference.

[2] To the extent some of the issues raised in this filing were previously addressed in the verification specific briefing – i.e., Dkts. 35 and 38 – Defendant likewise incorporates those submissions by reference.

on by the COVID-19 pandemic, Plaintiffs each respectively refused, and Bepalo subsequently wound up its business, such that the vessels were redelivered to their owners. But Plaintiffs have not sought to attach the assets of Bepalo – instead, based on allegations of alter-ego status as between seven (7) different entities and individuals (i.e., Bepalo; B-Gas AS; Bergshav Shipping Ltd; Bergshav Shipholding AS; Bergshav Shipping AS; B-Gas Holding Ltd; and Atle Bergshaven), Plaintiffs attached the vessel BERGITTA owned by Bergshav Shipping AS, a total stranger to each of the underlying charter parties. Bergshav Shipping AS accordingly moved to vacate the attachments.

## II. RESPONSE TO PLAINTIFFS' "PRELIMINARY CONSIDERATIONS"

The first third of Plaintiffs' filing [i.e., Dkt. 41 at p. 1-5] are not explicitly "objections" to the M&R, but rather address the appellate implications if the Magistrate's M&R is adopted. Specifically, Plaintiffs argue (1) that vacatur of the writs of attachment does not deprive the Court of *quasi in rem* jurisdiction and (2) that the Court's potential order vacating the attachment is appealable.

As an initial matter, Defendant submits that any ruling adopting the Magistrate's finding that Plaintiffs' initial complaints were not properly verified does mean the Court lacks *quasi in rem* jurisdiction. Plaintiffs base their argument to the contrary on the Supreme Court's statement in *Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 87 (1992), that "jurisdiction, once vested, is not divested, although a state of things should arrive in which original jurisdiction could not be exercised." See Dkt. 41 at p. 3. But Plaintiffs gloss over the import of the "once vested" language, and completely disregard the Supreme Court's earlier statement in the opinion that "it long has been understood that

3

a valid seizure of the *res* is a prerequisite to the initiation of an *in rem* civil … proceeding." *Id*. at 84.

In this case, jurisdiction never vested because Plaintiffs failed to initiate their actions via properly verified "Verified Complaints." The failure to properly verify a complaint deprives the court of *in rem* jurisdiction. See *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1090 (5th Cir. 1982) (reversing *in rem* judgment because Supplemental Rules "require[] the filing of a verified complaint as a prerequisite to obtaining *in rem* jurisdiction [and the] complaint was not verified.").[3] The same is true for *quasi in rem* jurisdiction.[4] The seizure of BERGITTA was invalid due to this lack of jurisdiction. Lack of *in rem* (or *quasi in rem*) jurisdiction requires the dismissal of Plaintiffs' respective complaints.

Plaintiffs, citing to *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852 (9th Cir. 2005), seem to mistake the issue of (A) the absence of *in rem* (or *quasi in rem*) jurisdiction at the outset of the case due to failure to comply with the Supplemental Admiralty Rules' requirement for a verified complaint with (B) whether the Fifth Circuit would retain jurisdiction over the case so as to affirm or reverse this Court's determination

---

[3] See also *United States v. $84,740.00 U.S. Currency*, 900 F.2d 1402, 1405 (9th Cir. 1990), rev'd on other grounds by *Republic Nat'l Bank v. United States*, 506 U.S. 80, 89 (1992); *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 739 F. Supp. 966, 968 (E.D. Pa. 1990) (failure to verify complaint as required by Supplemental Admiralty Rules "is a jurisdictional defect which requires dismissal."); *Gulf Union Ins. Co. Saudi Arabia v. M/V Lacerta*, 1992 WL 51532, at *4 (S.D.N.Y. Mar. 9, 1992) ("the motion to dismiss … for failure to obtain *in rem* jurisdiction over the vessel, must be granted…. [P]laintiff has not complied with … the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, which requires a verified complaint for an action *in rem*."); *Cevhertas Deniz Nakliyati Anonim Sirketi, A.S. v. Niederelbe Schiffartgesell GMBH Buxtenude*, 1991 WL 123951, at *8 (S.D.N.Y. June 22, 1991) ("failure to verify the complaint precludes Cevhertas's ability to pursue the claim *in rem*.").
[4] *Amstar Corp. v. M/V Alexandros T.*, 431 F. Supp. 328, 334 (D.Md.1977) ("Both Supplemental Rule B(1) and Supplemental Rule C(2) require that an action of this sort be instituted by means of a verified complaint."), aff'd, 664 F.2d 904 (4th Cir.1981).

4

of whether the initial attachment of property was proper. With respect to Plaintiffs potential appellate options, Defendant does not dispute that Plaintiffs may appeal to the Fifth Circuit. However, Defendant maintains that, if presented with this case, the Fifth Circuit would concur that the district court lacked subject-matter jurisdiction at the outset because Plaintiffs failed to comply with the jurisdictional prerequisite of filing a properly verified complaint.[5]

## III. STANDARD OF REVIEW

Considering the posture of this case, Defendant agrees with the Magistrate's conclusion that his ruling on the motion to vacate would have dispositive effect if adopted by the district court. Accordingly, under Rule 72(b), this Court is free to conduct a *de novo* review of "any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."

## IV. RESPONSE TO PLAINTIFFS' SPECIFIC OBJECTIONS

**1. Defects in Plaintiffs' Verifications are Substantive Omissions of Rule B's Required Elements, Not Merely "Technical Errors"**

In Plaintiffs' first objection, they cite to two Fifth Circuit cases, *Sembawang*

---

[5] See M&R, Dkt. 40 at p. 8, where the Magistrate cited to, *inter alia*, the following: *Goodwin v. Rios Tropicales, S.A.*, No. 04-22707 CIV, 2005 WL 8149246, at *4 (S.D. Fla. Nov. 18, 2005) (considering a motion to vacate a Rule B attachment and explaining "[t]he Supplemental Admiralty Rules ... require that a complaint be verified as a jurisdictional prerequisite of the issuance of a writ of attachment"); *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 637 (9th Cir. 2002) (considering a Rule C(2) *in rem* action and explaining "controlling precedent dictates that Appellants' failure to verify their complaint deprived the district court of *in rem* jurisdiction"); *Goodwin v. Rios Tropicales, S.A.*, No. 04-22707-CIV, 2005 WL 8149245, at *1 n.1 (S.D. Fla. Nov. 1, 2005) ("An unverified complaint is jurisdictionally defective and must be dismissed.").

*Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983 (5th Cir. 1992), and *Heidmar, Inc. v. Anomina Ravennate di Armamento Sp.A*, 132 F.3d 264 (5th Cir. 1998), to argue that a pleading error should not result in the release of Defendant's seized property (or now, the substitute security). However, both these cases involved instances where the plaintiff incorrectly characterized its action as a Rule C arrest, as opposed to a Rule B attachment. In both instances, the Fifth Circuit noted that the plaintiff could have initiated suit as a Rule B action and so, where there was no evidence of prejudice to the defendant, the Court of Appeals allowed the matter to be treated as if the action was brought under the proper Rule.

Defendant submits that *Sembawang* and *Heidmar* are irrelevant to the present action – the Plaintiffs here did not misidentify the rule on which they based their vessel seizure, but instead failed to comply with a threshold requirement of both Rules B and C – that is, to verify their originating complaints. And the failure was not simply an error. As demonstrated by Krohn-Hansen's testimony during the Rule E(4)(f) hearing, he confirmed that <u>he did not verify the facts alleged in the complaints</u>. See Dkt. 35-1 at p. 44 and 45. Moreover, Krohn-Hansen was either unwilling or unable to confirm while under oath on the stand that he possessed the requisite factual knowledge to provide a proper verification at the outset of the case. Further (in contrast to the *Sembawang* and *Heidmar* cases), Defendant was prejudiced in this matter, as Plaintiffs should not have been able to seize the BERGITTA on an *ex parte* basis under either Rule B or Rule C without having filed a properly verified complaint in any of their three cases.

Plaintiffs cite to *E. I. Dupont De Nemours & Co. v. Vance*, 60 U.S. (19 How.) 162 (1857) for the proposition that "[t]he rules of pleading in the admiralty are exceedingly

6

simple and free from technical requirements." *Id*. at 172. Defendant does not dispute that admiralty pleading rules are simple – **but they still exist**. Plaintiffs failed to comply with these simple rules and did not initiate their actions via a properly verified complaint, making their respective actions defective at the outset.

As the M&R makes clear, the Magistrate does not take issue with the technical form of Plaintiffs' respective verifications: "Right out of the gate, I agree with Plaintiffs that the language used in Krohn-Hansen's verifications track the language contained in § 1746." Dkt. 40 at p. 9. But the "verifications" considered in their entirety contain no substance related to the factual allegations which they purportedly seek to verify – <u>each verification lacks the critical and essential statement that the declarant believes the factual allegations in the related complaints to be true and correct</u>. That is why the Magistrate recommends vacatur and dismissal.

**2. Use of Word "Verification" Does Not Cure Fact that Complaints Were Not Actually Verified**

Plaintiffs' second objection is essentially a restatement and continuation of their first – that the mere use of the words "verified" and "verification" in the title of filing(s) can somehow suffice when the contents of the declarations needed to verify the complaints do not affirm as true and correct the operative factual allegations. As done in prior briefing, Plaintiffs' counsel again cite to their direct examination of Krohn-Hansen during the hearing, wherein he affirmed that he "verified" the complaints and their amendments, and

7

that "the contents of these Complaints [are] true and correct".[6] See Dkt. 41 at p. 10. But, just as before, Plaintiffs completely ignore Krohn-Hansen's testimony on cross-examination that he did not verify the complaints; instead, he had only read the complaints and could not affirm that the allegations therein were true. Dismissal is required, not due to "some pettifogging technicality", but because <u>Krohn-Hansen, as Plaintiffs' designated representative, did not at the time of filing and could not at the time of the hearing provide any support for the allegations in Plaintiffs' complaints against Bergshav Shipping AS</u>.[7]

---

[6] This effort at the hearing was no more than an after-the-fact effort to bolster Plaintiffs' defective verifications at the time of filing.

[7] See Dkt. No. 35-1 at p. 47-54:

> Q. So my question to you, sir, is with respect to Bergshav Shipping, what specifically are Plaintiffs contending that Bergshav did either fraudulently or wrongfully that harmed the Plaintiffs?
> A. I think that's for the Court to decide.
>
> Q. Do you know of any specific facts that Bergshav Shipping AS engaged in that fraudulently or wrongfully damaged the – or injured the Plaintiffs in this case?
> A. At this moment I cannot say I remember what Bergshav Shipping AS did specifically.
>
> \* \* \*
>
> Q. Yeah. And so my question to you, sir, is what is it that Bergshav Shipping AS did to strip those companies of its assets?
> A. This is not for me to decide. This is for the Court to decide.
>
> Q. Do you have any facts that Bergshav Shipping AS received any of the sales, assets, or proceeds from the sale of the vessels that --
> A. Yeah, facts will be -- the facts will be decided by the Court.
>
> Q. So is it fair to say then that as you -- as we sit here today, you do not know of any facts involving Bergshav Shipping AS relating to the sale of or purchase of those vessels; is that a fair statement?
> A. At this moment, because there are many companies involved in the Bergshav group, I cannot right now say what Bergshav Shipping did or did not do. This is something that the Court has to decide on the basis of the evidence provided.
>
> Q. So there's another statement here where it says Defendant accordingly using corporate forum abusively, that is to perpetrate fraud and commit other injustice. My question to you, sir, is what fraud or other injustice has Bergshav Shipping AS specifically committed?

8

To the extent that Plaintiffs' counsel now argues that Krohn-Hansen did not understand the import of the undersigned's cross-examination with respect to the complaints' factual allegations against Bergshav Shipping AS, it was incumbent on Plaintiffs' counsel to cure any "misunderstanding" on redirect. But, in any event, Defendant submits that Krohn-Hansen's behavior on the stand made clear that he knew exactly what he could and, more importantly, could not truthfully testify to while under oath. In their objections, Plaintiffs omit the most salient testimony from Krohn-Hansen:

> Q. [THE VERIFICATION AT DKT. 17-1 IS READ INTO THE RECORD.] Did I read that correctly, sir?
> A. Yes.
>
> Q. And is it fair to say, sir, from that, that at the time that you executed that verification on the 22nd of March, 2021, that you did not verify

---

> A. Again, that is for the Court to decide. I cannot decide that.
>
> Q. A fair statement as we sit here today that you don't have any facts that demonstrate that Bergshav Shipping AS perpetrated any fraud or committed any other injustice, correct?
> A. Again, this is for the Court to decide.
>
> *   *   *
>
> Q. Do you have any evidence as we sit here today that Bergshav Shipping AS received any assets as a result of the alleged asset stripping?
> A. That is again for the Court to decide based on what has been declared.
>
> Q. And you would also agree with me that the Bergshav Shipping As was not involved in the bare boat charter transaction involving the three Eco vessels that are at issue, correct?
> A. That Bergshav AS was not involved? Bergshav AS, Shipping AS is not involved in the charter [parties], mainly the charter [parties]. […]
>
> Q. But as in terms of the actual contracting, you were involved in the contracting for those vessels and Bergshav Shipping AS was not a party to those bare boat charter agreements, correct?
> A. In the bare boat charter, Bergshav Shipping AS, yes, that is correct.

9

> the truth of the allegations set forth in the verified Complaint, only that you had read the verified Complaint and the exhibits, correct?
>
> A. Correct.[8]

* * *

> Q. [THE VERIFICATION AT DKT. 1-1 IS READ INTO THE RECORD.] Did I read that correctly, sir?
> A. Yes.
>
> Q. And, again, it's a fair statement to say that you did not verify the truth of the allegations in the Original Complaint, only that you had read the original verified Complaint and the exhibits thereto, correct?
> A. Correct.[9]

Krohn-Hansen clearly understood the questions presented to him.

## 3. Appellate Jurisdiction Remains, and Plaintiffs Cannot Amend Their Way Into Compliance

Plaintiffs' third objection is largely a rehash of what was initially discussed in their "Preliminary Considerations" – Defendant would therefore refer the Court to its own discussion above. However, Plaintiffs also incorporate an unrelated argument in their "third objection" section that they should be granted leave "to cure the perceived defect by filing a supplementary verification … adding the word(s) that the Court considers essential." But, as Defendant previously explained in briefing to the Magistrate, Plaintiffs cannot amend their way out of dismissal.

"It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought" and not afterwards. *Mollan v. Torrance*, 22 U.S. 537, 539-40 (1824). "When a defendant challenges the validity of an attachment, the burden is

---

[8] See Dkt. No. 35-1 at p. 43-44.
[9] *Id*. at p. 45.

10

on the plaintiff to prove there was reasonable grounds for issuing the writ." *Transamerica Leasing Inc. v. Amazonica*, 1997 WL 834554, at *2 (S.D. Ala. June 26, 1997) (citing *Salazar v. Atlantic Sun*, 881 F.2d 73, 79 (3rd Cir.1989)). "In making its determination on this issue, **the Court's inquiry must focus on the facts known at the time of the attachment**." *Id*. (emphasis added; citing *Western Bulk Carriers, Pty. Ltd. v. P.S. Internat'l, Ltd*., 762 F. Supp. 1302, 1307 (S.D. Ohio 1991)). "This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Glb. Grp., L.P*., 541 U.S. 567, 570-71 (2004).[10]

Aside from the time-of-filing rule, which Defendant believes is dispositive, Krohn-Hansen's own testimony in open court forecloses any argument Plaintiffs may raise that a new verification could somehow "relate back" to the timing of the filing of the initial Complaints. This is not an instance where Krohn-Hansen knew the truth of the facts alleged in the Complaints, but the lawyers inadvertently omitted "magic language." Instead, Krohn-Hansen implicitly and explicitly admitted that he had absolutely no knowledge or basis for asserting claims against Bergshav Shipping AS, either on its own account or through a theory of alter ego. (Indeed, perhaps recognizing the damage a direct response would do to Plaintiffs' case, Krohn-Hansen defaulted to non-answers when asked about the basis for specific factual allegations in the complaints, repeatedly saying that the

---

[10] Defendant notes that this time-of-filing issue was flagged in Bergshav Shipping AS's supplemental briefing regarding the sufficiency of the verification. Plaintiffs failed to respond in their briefing to the Magistrate, and likewise ignore the issue here.

11

veracity of those statements was "for the Court to decide.")

A verification is confirmation of truth by affidavit or oath. See *Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992). Krohn-Hansen admitted he did not verify the factual allegations in the originally filed "verified" complaints. Dkt. 35-1 at p. 43-45. During the Rule E(4)(f) hearing, Krohn-Hansen could not provide any explanation as to why the assets of Bergshav Shipping AS, a stranger to the charter parties which form the basis of Plaintiffs' claims, should be the target of breach-of-contract claims against their contractual counterparty Bepalo. See *id*. at p. 45-54 (including the admission that "At this moment I cannot say I remember what Bergshav Shipping AS did specifically."). Simply making bare assertions of liability in a complaint is insufficient to meet Plaintiffs' burden for an attachment under Rule B – <u>Plaintiffs must put forward a witness willing to be held personally accountable, under penalty of perjury, for the truth of the facts alleged</u>. This, Plaintiffs did not do.

Following his performance on the stand, Plaintiffs' counsel cannot credibly produce new verifications by Krohn-Hansen stating that he had the requisite knowledge <u>at the time the complaints were filed and the BERGITTA was attached</u> to verify the allegations relevant to Bergshav Shipping AS. Krohn-Hansen has already conclusively established that he has no knowledge on those points. Given that Krohn-Hansen was Plaintiffs' point-person for the negotiation of the charter parties at issue and the individual who conducted research into the relationships between the entities within the larger Bergshav group, it defies logic to believe that Plaintiffs have some previously undisclosed witness who could speak from personal knowledge <u>as of January 26, 2021</u> (i.e., the date Plaintiffs' first

12

complaint was filed) concerning the basis for Bergshav Shipping AS's purported liability.

As one federal district court has observed "in the context of maritime attachment actions, counsel proceeding on an *ex parte* basis have a special obligation to ensure that the representations they are making to the Court, <u>and the facts they are verifying in a verified complaint</u>, are true." *Noble Res. Pte. Ltd v. Metinvest Holding Ltd.*, 622 F. Supp. 2d 77, 83 n.9 (S.D.N.Y. 2009) (emphasis added). "[I]n signing a verified complaint, <u>the signator must satisfy himself that the averments in the complaint are true</u>, based upon either his own knowledge or upon information and belief." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1295 (9th Cir. 1997) (emphasis added; internal quotations omitted). The time to investigate and assess the legitimacy and basis for facts alleged in a verified complaint is <u>before</u> the action is initiated. To hold otherwise and permit a party to retroactively verify a complaint post-attachment would essentially gut the protection to defendants that Rule B's verification requirement is meant to ensure. The requirements for a Rule B attachment are simple. Plaintiffs herein clearly did not meet those requirements. Plaintiffs' respective actions must therefore be dismissed, and the related attachment(s) must be vacated.

## V. ADDITIONAL GROUNDS FOR DISMISSAL

As acknowledged by the Magistrate, the initial briefing by Defendant attacked the sufficiency of Plaintiffs' alter-ego allegations against Bergshav Shipping AS. That is, Plaintiffs failed to assert a valid *prima facie* admiralty claim against Defendant where there were no facts or allegations that Bergshav Shipping AS was involved in the allegedly wrongful act (i.e., the alleged asset stripping from Plaintiffs' counterparty, Bepalo), as is required to pierce the corporate veil when the underlying claim is based in breach of

13

contract. Further, Defendant provided undisputed evidence establishing that Bepalo (with its multiple shareholders) had formal minority shareholder protections in place such that it could not, as a matter of law, be considered to be under the "domination and control" of the majority shareholder (B-Gas Holding Ltd.) as alleged by Plaintiffs.

Because of the issue with Plaintiffs' defective verifications, the Magistrate elected not to reach these arguments. However, given the scope of the court's *de novo* review, this Court would be well within its rights to adopt the Magistrate's recommendation (i.e., that the Motion to Vacate be granted, the substitute security be released, and the consolidated suit be dismissed) based on the well-briefed arguments in Defendant's Motion to Vacate [Dkt. 15] and its related Reply [Dkt. 22] in support of same, which are hereby incorporated by reference.

## VI.  CONCLUSION AND PRAYER

Plaintiffs sought to invoke an extraordinary remedy (pre-judgement attachment) premised upon an extraordinary alter-ego theory of liability. Rule B requires strict compliance with its provisions. Plaintiffs failed to submit the required proper verification in each of their respective actions, depriving this Court of subject-matter jurisdiction. Plaintiffs did not (and now cannot) meet the requirements of Rule B in their respective actions against Bergshav Shipping AS. Moreover, Plaintiffs' complaints fail to allege facts sufficient to hold Bergshav Shipping AS liable as the alter ego of Bepalo for their contract claims against Bepalo, and Plaintiffs have likewise failed to refute the evidence showing the lack of domination and control of Bepalo by its majority shareholder, which is a critical and necessary link in the alleged alter-ego chain that would purportedly eventually lead to

Bergshav Shipping AS.  For all these reasons, the writs of attachment against the M/T BERGITTA must be vacated, and Plaintiffs' claims against Bergshav Shipping AS should be dismissed.

WHEREFORE, Bergshav Shipping AS prays that this Honorable Court vacate the attachment of the letter of undertaking, which stands as substitute security for the M/T BERGITTA, dismiss this matter for lack of subject-matter jurisdiction and for all such other and further relief as may be just and proper.

Respectfully submitted,

BLANK ROME LLP

*/s/ Keith B. Letourneau*
**Keith B. Letourneau**
Fed. I.D. No. 20041
State Bar No. 00795893
Email: kletourneau@blankrome.com
**Zachary R. Cain**
Fed. I.D. No. 1829905
State Bar No. 24078297
Email: zcain@blankrome.com
717 Texas Avenue, Suite 1400
Houston, TX  77002
Ph.: 713-228-6601
Fax: 713-228-6605

***Attorneys for Bergshav Shipping AS***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was served upon all counsel of record pursuant to Rule 5 of the Federal Rules of Civil Procedure, via the Court's CM/ECF system, on this 28th day of June, 2021.

*/s/ Keith B. Letourneau*
Keith B. Letourneau

142306.06501/126217600v.2